**GENERAL STAR INDEMNITY COMPANY, Plaintiff,**

v.

**PUCKIT, L.C., and Rose Lutzk, Defendants.**

**No. 92–1708–Civ–T–17B.**

United States District Court, M.D. Florida, Tampa Division.

April 20, 1993.

Guy Ellington Burnette, Jr., John R. Mathias, Butler, Burnette & Pappas, Tampa, FL, for plaintiff.

Leonard H. Marks, Tampa, FL, for defendants.

### ORDER ON DEFENDANT PUCKIT, L.C.'S MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant PUCKIT, L.C.'s ("Puckit's") Motion to Dismiss Plaintiff's Complaint (Docket No. 3). Plaintiff's Complaint prays for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988) ("the Act"). (See Docket No. 1). More specifically, Plaintiff, GENERAL STAR INDEMNITY COMPANY ("General Star"), requests a determination that it is not liable to either Defendant Puckit or Defendant ROSE LUTZK ("Lutzk") for a claim made under an insurance policy executed between General Star and Defendant Puckit.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Puckit is a Florida limited liability company which transacts business in the State of Florida, and has its principal place of business in Hillsborough County, Florida. Defendant Lutzk is a citizen of the State of Florida, residing in Hillsborough County. Defendant Puckit operated a titanium recycling facility as lessee of property and improvements owned by Defendant Lutzk.

Defendant Puckit made written application, through an insurance agent American Business Insurance Southeast, Inc., d/b/a ABI–Crowder, Jacobs, Fendig ("ABI"), to obtain a policy of insurance from Plaintiff General Star insuring its business premises, and related improvements and equipment, from loss. The coverage sought included loss from fire. Defendant Lutzk was named

in the application by Defendant Puckit as an "Additional Interest."

Certain representations or omissions concerning the nature of Puckit's business activities were made on the insurance application, particularly information about the types of materials used on the property, and related hazards of explosion or combustion. In particular, Plaintiff General Star alleges that it was not advised that titanium, apparently a highly flammable metal under certain conditions, was being processed in Defendant Puckit's operations. Plaintiff also asserts this alleged misrepresentation or omission of information would have significantly altered Plaintiff General Star's calculation of its risks to insure the property. Plaintiff asserts that its knowledge of information allegedly misrepresented or omitted would have resulted in either higher premiums to Puckit, different coverage under the policy, or denial of coverage. So, there are questions as to the truth and completeness of the representations made in the insurance application, and there are additional questions as to whether any misrepresentations or omissions which may have been made were assignable either to Defendant Puckit, or to the insurance agent handling the application, ABI.

However, on or about June 3, 1992, Plaintiff General Star did issue a policy of insurance. Then, on or about September 8, 1992, the insured property was destroyed by fire. Defendant Puckit submitted a claim to Plaintiff. Eventually, Plaintiff denied all coverage of the property by letter dated October 26, 1992, asserting that the alleged misrepresentations on the insurance application, pursuant to FLA.STAT. ch. 627.409 (1991), rendered the policy void *ab initio*. (See Docket No. 3, Exhibit "A").

Apparently, on the same day the letter denying coverage was sent by facsimile to Defendant Puckit, October 27, 1992, Plaintiff filed this action for declaratory judgment. In response to Plaintiff's denial of coverage, Defendant Puckit then filed a separate action in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida ("State court"). (See Docket No. 3, Exhibit "B"). The Complaint alleged two causes of action: Plaintiff General Star's breach of contract; and negligence on the part of ABI, for its alleged misrepresentations or omissions of information concerning Puckit's operations in preparing the insurance application materials which had been submitted to Plaintiff General Star. Defendant's State court Complaint was filed in that court on November 20, 1992. (See Docket No. 3, page 2, paragraph 7). Information now before this Court does not indicate any activity in the State court suit filed by Defendant Puckit, beyond the filing of the complaint. Then, on November 25, 1992, Defendant Puckit filed the Motion to Dismiss addressed in this order.

## II. LEGAL ANALYSIS

Defendant's Motion to Dismiss is submitted pursuant to Rules 8(c) and 12(b), FED. R.CIV.P. Defendant has not made it sufficiently clear how Rule 8(c) is applicable, nor has Defendant established the subsection of Rule 12(b) under which the motion is made. Among the possible grounds for the motion is a failure to join ABI as an indispensable party pursuant to Rule 19, FED.R.CIV.P., as provided for by Rule 12(b)(7). Nevertheless, the Memorandum of Law in Support of Puckit, L.C.'s Motion to Dismiss (Docket No. 4) does contain sufficient legal grounds for a good faith Motion to Dismiss, and the arguments raised in Defendant's Memorandum in Support are properly addressed, despite the ambiguity concerning the Rule under which the Motion to Dismiss is submitted.

Defendant Puckit raises the following three grounds in support of its Motion to Dismiss: that the "doctrine of abstention" strongly favors dismissal, that Plaintiff's Complaint seeking declaratory judgment is an impermissible attempt at "procedural fencing" warranting dismissal, and that a failure to dismiss the claim will still result in subsequent dismissal for lack of subject matter jurisdiction. Each of these grounds for dismissal is analyzed below.

### A. *Abstention/Discretion to Consider Declaratory Judgment*

Defendant's Memorandum in Support characterizes this ground for dismissal as application of the "doctrine of abstention." Plaintiff's Reply to Defendant's Motion to Dismiss and Memorandum of Law in Opposition (Docket No. 7) addresses the issue using

the same terminology. However, there are actually two distinct circumstances which Defendant is addressing in its Motion to Dismiss, and which Plaintiff responds to, but which neither adequately distinguishes. This Court must separate both circumstances to determine their applicability to the issue at bar, and to correctly rule on this broad "abstention" argument raised by Defendant. The two differing circumstances which must be cleanly separated are the two often-confused areas of "abstention," and "discretion to grant or dismiss a request for declaratory judgment." This elusive distinction has been the subject of fewer opinions by this circuit than in others, and this may explain the parties' failure to adequately make the distinction, while making their broad "abstention" arguments.

Defendant relies first on the United States Supreme Court's opinion in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) as grounds for dismissal of Plaintiff's Complaint seeking declaratory judgment. Defendant's Memorandum in Support characterizes *Brillhart* as "the leading case regarding federal court *abstention* in a declaratory judgment action when there is pending a state court action on the same issues governed by state law." (Defendant's Memorandum in Support, p. 3) (emphasis added). This statement is accurate in most respects, except that the case concerns itself not with the broader doctrine of "abstention," but instead sets the parameters for the discretion of federal courts to utilize declaratory judgments, when asked to do so within the context of an action which is pending simultaneously in a state court.

While this distinction may seem a matter of semantics only, that is not the case. This distinction is critical to determination of the issue at bar, as evidenced by fact that the parties spend much of the verbiage in their memoranda of law debating whether *Brillhart* is determinative of the question raised in Defendant's Motion to Dismiss, or whether that role is better served by the two decisions by the U.S. Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). (See Defendant's Memorandum in Support, pp. 5–7, and see Plaintiff's Reply, pp. 5–9).

Not only have the two parties in this dispute alluded to some significant difference between the considerations described in *Brillhart*, and those in *Colorado River/Moses H. Cone*, but so have several courts. For example, the Third Circuit has stated "[t]he district court's discretion under the [*Brillhart* analysis called for by the] Declaratory Judgment Act is significantly greater than under *Colorado River.*" *United States v. Commonwealth of Pennsylvania, Dep't of Envtl. Resources*, 923 F.2d 1071, 1074 (3rd Cir.1991). Indeed, under *Colorado River*, a federal court has latitude to surrender its jurisdiction only if the "exceptional circumstances" test employed by that Court is met, overcoming the "*duty* of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 (emphasis added). The Court also describes an "unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817, 96 S.Ct. at 1246. Therefore, a high hurdle favoring the exercise of jurisdiction must be overcome when circumstances involving the *Colorado River* "abstention doctrine" are present. On the other hand, in circumstances where the *Brillhart* analysis is called for, the general rule to be overcome is that it is "[o]rdinarily ... vexatious for a federal court to proceed *in a declaratory judgment suit* where another suit is pending in a state court presenting the same issues ... [Such] interference ... should be avoided." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176 (emphasis added). To provide support for, and to further appreciate this critical distinction between, discretion under the Declaratory Judgment Act ("the Act") and circumstances where the abstention doctrine is applied, additional discussion is warranted.

*Brillhart* is the only one of these three cases which does not mention the phrase "doctrine of abstention" or "abstention doctrine." Therefore, it is not improper to conclude that this doctrine may be inapplicable to questions concerning the exercise of discretion to consider declaratory judgments, as

was the case in *Brillhart*. Note also that *Brillhart* is also the only one of the three cases involving a dismissal of a request for declaratory judgment under the Act. See *Brillhart*, 316 U.S. at 492, 62 S.Ct. at 1174. This may further suggest that *Brillhart* (and other cases following its lead) contain the criteria which should be applied to determine whether this Court should utilize its discretion to consider granting a declaratory judgment. This may support the conclusion that *Colorado River* and *Moses H. Cone* should not serve as a basis for determining whether the *exercise of discretion under the Act* is appropriate. Those cases should only be employed to decide issues concerning *abstention* of federal courts from exercising their jurisdiction, in ways other than through the exercise of their discretionary power to issue a declaratory judgment, when a state court action is pending to resolve the same controversy.

In reaching this conclusion, this Court considered the case law submitted by the parties, including cases from this circuit, but also utilized opinions from other circuits which were invaluable to fill those holes not yet addressed by the very few opinions issued by this circuit. To begin with opinions from this circuit, the question of the degree of discretion available to a district court under the Declaratory Judgment Act was considered in *Angora Enterprises, Inc. v. Condominium Association of Lakeside Village, Inc.*, 796 F.2d 384 (11th Cir.1986). In *Angora*, this circuit failed to provide clarification as to the burden which the trial court must overcome to decline jurisdiction over an action for declaratory judgment. The *Angora* court cites commentators Wright, Miller and Kane for the proposition that federal interference via the exercise of jurisdiction to consider a declaratory judgment should be avoided when the purpose of the "federal declaratory action [is] merely to anticipate a defense that otherwise would be presented in a state action." *Id.* at 388. The court cites *Brillhart* in support of this broad discretion to avoid unnecessary interference with a state court action. However, the *Angora* court then goes on to imply that the *Colorado River* "exceptional circumstances" test would be applicable to a Motion to Dismiss a request for a district court's exercise of its declaratory judgment

power. *Id.* In this case at bar, and in others where this issue will undoubtedly surface, *Angora* can be interpreted as failing to provide clear direction.

It is possible, and even likely, that the lack of clarity in *Angora* is a carryover from the confusion between discretion in the use of a declaratory judgment, and the limits otherwise described by the abstention doctrine, that some courts have perceived in the Fifth Circuit, this circuit's predecessor circuit. The Third Circuit noted the confusion between the *Brillhart* and *Colorado River/Moses H. Cone* tests, commenting that the confusion was particularly evident in the Fifth Circuit. *Pennsylvania Dep't of Envtl. Resources*, 923 F.2d at 1074 (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 n. 11 (3rd Cir.1989)). The Fifth Circuit had itself noted the confusion in its opinions, and in *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 n. 1 (5th Cir. 1983), finally determined that the narrow range of instances described by *Colorado River* in which a district court may dismiss a declaratory judgment action was not to carry over to cases involving declaratory judgment actions. See also *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 29 n. 2 (5th Cir.1989). *Puritan Fashions* determined that, in declaratory judgment actions in particular, the remedial and equitable nature of a declaratory judgment vests the court with a broader discretion than otherwise available under *Colorado River*. *Puritan Fashions*, 706 F.2d at 601 n. 1.

Returning to this point of confusion again in 1989, three years after *Angora*, this circuit reversed the trial court's dismissal of a declaratory judgment action filed by an insurer, under similar circumstances to the case now before this Court. See *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330 (11th Cir.1989). In doing so, this circuit again spoke of the discretion available to the trial court to dismiss the request for declaratory judgment, invoking the concept behind *Brillhart's* test. However, the Eleventh Circuit also stated that this "discretion should be exercised liberally in favor of granting such relief in order to accomplish the purposes of the Declaratory Judgment Act." *Id.* at 1333. At first

reading, this seems to imply adherence to the more limited discretion described in *Colorado River*. However, the *Holbrook* court was driven by the preference for rapid resolution of the key issue in that case: whether the plaintiff/insurance company would have any liability to the insured defendant in the declaratory judgment action, if a pending state court action held a third-party underinsured motorist liable in tort to the insured defendant. Note that in *Holbrook* there were two separate questions of liability. First, there was the question of liability between the insurance company, and both its insured and the third-party underinsured. Second, there was the question of the distinct and entirely separate tort liability between the insured and his insurance company, to be resolved in a tort action ongoing in state court. *Id.* at 1332–33. The Eleventh Circuit therefore was correct to vacate the trial court's order dismissing the declaratory judgment action, because that action was not an attempt to resolve the issue then pending in state court. It was therefore unnecessary for the trial court to have withheld its jurisdiction over the declaratory judgment action, despite its discretion to do so, as conceded by the Eleventh Circuit. Therefore, particularly because there is no mention of the *Colorado River/Moses H. Cone* analysis in *Holbrook*, it would be incorrect to assume that the Eleventh Circuit's language in *Holbrook* was intended to assign the *Colorado River* analysis to declaratory judgment actions, since the case can be rationalized on other grounds not inconsistent with *Brillhart*.

■ In the absence of an express holding in this circuit resolving the confusion concerning the degree of district courts' discretion to surrender jurisdiction over declaratory judgment actions, this Court should also consider the reasoning employed by its sister courts, and by other circuits which have decided the issue. As already noted the Third Circuit has adopted the *Brillhart* analysis, affording district courts more latitude to surrender jurisdiction over declaratory judgment actions, if warranted. See *Pennsylvania Dep't of Envtl. Resources, supra.* In *Brillhart*, the U.S. Supreme Court identified the inquiry to be used for determining whether the exercise of this broader discretion was appropriate. The Court inquired

whether the questions "can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175. This involves an inquiry to assess whether the claims of "all parties in interest can satisfactorily be adjudicated" in the state court proceeding. *Id.* Importantly, beyond this single inquiry, the *Brillhart* Court decided not to attempt to enumerate other considerations in other cases for determining whether a district court should exercise its discretion, to dismiss a declaratory judgment action while a state court action was ongoing. However, the Third Circuit has elaborated on this analysis, and requires consideration of the following:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of the obligation; and

(4) the availability and relative convenience of other remedies.

*Pennsylvania Dep't of Envtl. Resources,* 923 F.2d at 1075.

The four considerations, and the more general question used in *Brillhart* together would be consistent with the results reached in *Angora* and *Holbrook*. Taken together, these five factors serve to determine whether an exercise of federal court jurisdiction, in addition to the state court action already pending, "will most fully serve the needs and convenience of the parties and provide a *comprehensive* solution of the general conflict." 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2758 (2d ed.1983) (emphasis added). Therefore, these factors are consistent with precedent in this circuit, and are hereby adopted for use in determining whether the discretion provided by the Act should be exercised.

■ Applying these factors to the instant facts, this Court concludes that the action for declaratory judgment should be dismissed by this court, absent other considerations addressed in other sections of this order which follow. First, as is also the case with the declaratory judgment action which Plaintiff asks be dismissed, the proceeding in state

court involves a determination of Plaintiff General Star's obligations to Defendant Puckit, L.C. However, in the action now pending in state court, the plaintiff (Puckit, L.C.) also seeks to determine whether ABI was negligent in the manner in which it secured the policy at issue for Puckit. Therefore, the state court action will allow for a determination of the claims of all parties in interest, including Puckit's claim against ABI. Dismissal is therefore supported by *Brillhart.*

Using the factors employed by the Third Circuit, dismissal is further warranted. In addition to the uncertainty of Plaintiff General Star's obligation to Defendant Puckit, there are also uncertainties concerning the obligations between ABI and Puckit, and perhaps even between ABI and General Star. These other uncertainties are as much a part of the basis of the controversy as is the single uncertainty which Plaintiff seeks to resolve through this declaratory judgment action. This supports dismissal of this action. Resolution of the issues will occur in the City of Tampa, no matter what the forum. Therefore, dismissal will not inconvenience any of the parties. Additionally, no public interest that would be addressed in the action for declaratory judgment will go untreated in the pending state court action. Finally, other more comprehensive remedies which are at least as convenient as the action for declaratory judgment are currently available to Plaintiff General Star in state court. In combination, all the factors considered above support the exercise of this Court's discretion to dismiss this declaratory judgment action. However, this Court must also consider the two other grounds for maintaining jurisdiction over the declaratory judgment action, and it is to these other arguments that our attention is now directed.

### B. *"Procedural Fencing"*

 Defendant Puckit asserts that Plaintiff's filing of the declaratory judgment action amounts to impermissible "procedural fencing." This Court concurs with the view expressed in *Mission Insurance Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir.1983), that declaratory complaints filed in anticipation of a suit and used to forum shop are to be actively discouraged, and may be consid-

ered in review of a motion to dismiss any such declaratory action. *Id.* at 602 n. 3 (citing *American Automobile Ins. Co. v. Freundt,* 103 F.2d 613, 617 (7th Cir.1939)). This Court also recognizes the potential conflict between a declaratory action filed by a plaintiff acting in a preventative mode, as is clearly provided for by the Declaratory Judgment Act and supported by *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), and anticipatory filings of declaratory actions, as is alleged here by. Defendant Puckit. The resolution of this conflict lies in the factual circumstances, with particular attention to sequence of events, and the purpose for the filing of the declaratory judgment action.

In *Haworth,* the party seeking declaratory relief did so principally for the purpose of finally determining whether the critical fact in a long-standing controversy was sustained or contradicted by the evidence which would be obtained in a judicial proceeding. The plaintiff/insurance company had denied the insured's claims because it had reason to believe the insured was not permanently disabled as he had alleged, and instead had concluded that the insured's policies had lapsed through nonpayment. The insured had always maintained that the insurance company was obligated to pay proceeds under the policies, pursuant to provisions which provided for disability benefits under the policies which covered the payment of premiums while the insured was disabled. *Haworth,* 300 U.S. at 239, 57 S.Ct. at 463. Therefore, the only manner in which this deadlock could be broken was with the filing of an action by one of the parties to finally determine whether a disability was supported by the evidence. In the absence of any suit filed by the insured for an extended period of time, and in light of repeated submissions of the claims to Aetna, a declaratory action was supported.

It is important to note there were no other pending state actions at the time the declaratory action in *Haworth* was filed, and, furthermore, it was clear that the insured had no intentions to file any suit to determine the matter. This is clearly a circumstance under which there is no evidence the declaratory action was filed as a means of forum shop-

ping, nor was it filed in anticipation of any litigation.

The facts in the instant case urge a different conclusion. The sworn statements in the Affidavit of Michael Devereux submitted by Defendant Puckit (Docket No. 5), which stand unchallenged by Plaintiff General Star, and the fact that transmittal of the letter denying Puckit insurance coverage was delayed until the same date Plaintiff General Star filed its declaratory action, taken together, convince this Court that these circumstances were completely unlike those in *Haworth*. This Court notes that the Affidavit contains unchallenged allegations that the decision to deny Puckit insurance coverage, and the basis for the denial of coverage, had been determined by General Star several days before a letter was sent notifying Puckit in writing.

The Affidavit also contains allegations, which go unchallenged, that promised written correspondence advising Puckit of denial of coverage was delayed beyond the date expected. It is doubtful that delay, which extended until the very day the declaratory action was filed, was merely coincidental. Similar factual circumstances resulted in a finding that a declaratory action was filed in anticipation of litigation in another court in *Puritan Fashions*. See 706 F.2d at 600–02. General Star's delay in transmitting the letter of denial is perfectly consistent with a lack of any intent to use the action for declaratory judgment to reach a decision to provide or deny insurance coverage. That decision, to deny coverage, had already been made by General Star. The declaratory action was obviously filed not to determine General Star's obligations under the contract, as is alleged on pp. 10–13 of Plaintiff's Reply, because General Star was already confident those obligations did not exist. The scant evidence of the events leading up to the filing certainly does not rule out the possibility, and in fact suggests, the declaratory action could have been filed merely to secure forum in this Court in anticipation of litigation.

This Court also concurs with the observations made in Defendant's Memorandum in Support (p. 9), describing the circumstances of this case which are similar to those described in *Casualty Indemnity Exchange v. Hugh Croft Enterprises, Inc.*, 714 F.Supp.

1190, 1193 (S.D.Fla.1989). In *Hugh Croft*, the District Court dismissed a declaratory judgment action, in part because it recognized that the plaintiff in the action dismissed would have been unable to remove a suit filed in state court to the District Court. If the insured, a Florida citizen, had been the first to file an action against the out-of-state insurer and its Florida agent, and had done so in state court, removal by the insurance company would have been impossible, as there would be no diversity of citizenship. Also, federal question jurisdiction could not be asserted since the action filed in state court would be based entirely on state law.

In the case at bar, the same circumstances would exist. Therefore, another possible explanation for the filing of this action, after Plaintiff General Star had already determined its obligations, would be "to accomplish a 'backdoor' removal." *Id.* Any such purpose, would be inconsistent with the intended purpose of the Declaratory Judgment Act, and would constitute grounds for dismissal.

There is insufficient evidence now before this Court to establish, with the required degree of confidence, that Plaintiff General Star filed its declaratory action for the purpose of forum shopping, for the purpose of "procedural fencing" in anticipation of state court litigation, or to avoid problems with removal that it would later encounter. However, the evidence is sufficient to suggest all these possibilities, and to suggest that the objectives facilitated by the Act were not intended by Plaintiff General Star. *Puritan Fashions* establishes precedent for dismissing declaratory actions based on the same reservations noted by this Court, but particularly where other considerations also warrant such dismissal. *Puritan Fashions*, 706 F.2d at 602. Therefore, the conclusions reached by this Court in this section, taken together with those reached in the preceding section, urge dismissal.

### C. Dismissal for Lack of Subject Matter Jurisdiction

Defendant argues that a failure to dismiss the declaratory action will require Defendant to join ABI, as a indispensable party pursu-

ant to Rule 19, FED.R.CIV.P. It is unnecessary, in view of the conclusions already reached in this analysis, to determine whether ABI would qualify as an indispensable party pursuant to Rule 19(b). If ABI does qualify under Rule 19(b), then lack of diversity is tolerated by the FED.R.CIV.P., and Defendant Puckit would be able to request joinder of ABI as a third-party defendant.

If ABI fails to qualify as an indispensable party, the court may indeed provide for joinder of the related claim between Defendant Puckit and ABI, and this can fall within the court's ancillary jurisdiction, even absent any independent grounds for the exercise of federal jurisdiction. However, calculation of these permutations is unimportant, as the central issue in this analysis is still whether the claim is consistent with the Declaratory Judgment Act. For the reasons discussed in Parts II.A. and II.B. above, dismissal is appropriate. Accordingly, it is

**ORDERED** that Defendant PUCKIT, L.C.'s Motion to Dismiss Plaintiff's Complaint (Docket No. 3), be **granted.**

**DONE and ORDERED.**