**NORTHERN INSURANCE COMPANY OF NEW YORK, a foreign corporation, Plaintiff,**

v.

**DAVID NELSON CONSTRUCTION COMPANY, a Florida Corporation, Green Mark Landscape, Inc., A Florida Corporation, Michael Kim Hamm, an individual, Richard H. Siekman, an individual, and Kathy Siekman, an individual, Defendants.**

No. 98–1946–Civ–T–17F.

United States District Court,
M.D. Florida,
Tampa Division.

March 1, 1999.

Robert Brandeis Bennett, J. Gregory Giannuzzi, Rissman, Weisberg, Barrett, Hurt, Donohue & McLain, P.A., Tampa, FL, for FCCI Mutual Ins. Co.

B. Richard Young, B. Richard Young P.A., Pensacola, FL, for Northern Insurance Company of New York.

V. James Dickson, Ruden, McClosky, Smith, Schuster & Russell, St. Petersburg, FL, for David Nelson Construction Company.

James R. Jones, Jr., Law Office of James R. Jones, Jr., Spring Hill, FL,

Wayne S. Koppel, Flaster, Koppel & Bates, Plantation, FL, for Green Mark Landscape, Inc., Richard H. Siekman, Kathy Siekman.

### ORDER ON DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STAY PENDING ADMINISTRATIVE AGENCY DETERMINATION AND/OR ADJUDICATION IN PENDING STATE COURT PROCEEDING

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendants', DAVID NELSON CONSTRUCTION COMPANY ("Nelson"), GREEN MARK LANDSCAPE, INC. ("Green Mark"), MICHAEL KIM HAMM ("Hamm"), RICHARD H. SIEKMAN ("Siekman"), AND KATHY SIEKMAN'S, Motion to Dismiss or in the Alternative Motion to Stay Plaintiff's Complaint (Docket Nos. 4 and 7), filed October 14, 1998. Plaintiff filed their response, (Docket No. 16), on December 3, 1998. Plaintiff's complaint prays for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988). More specifically, Plaintiff, NORTHERN INSURANCE COMPANY OF NEW YORK ("Northern"), requests a determination that it is not responsible for indemnification of the Defendants Nelson or Hamm for a claim made under an insurance policy. Also, Northern requests that Defendant Siekman be excluded from insurance coverage because Siekman was a statutory employee of Nelson at the time of injury.

### STANDARD OF REVIEW

Under *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. *See also Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir.1982). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, a court can examine only the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D.Fla.1995). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Also, a court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support the cause of action, dismissal of the complaint is appropriate. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir.1991), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *Powell v. United States*, 945 F.2d 374 (11th Cir.1991). With this standard in mind the Court turns to consideration of the pending motions.

### BACKGROUND

The instant cause of action was filed on September 22, 1998. (Docket No. 1). The defendants responded to the cause of action with an answer to the complaint and supplemented that answer with affirmative responses. (Docket Nos. 3 and 5). On October 14, 1998, the defendants filed the Motion to Dismiss or in the Alternative Motion to Stay, (Docket Nos. 4 and 7), setting forth three arguments as to why

this Court should abstain form deciding the instant dispute. The three arguments supporting the defendants' motions are set forth in the three Supreme Court opinions of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

On October 26, 1998, Northern filed a motion for extension of time (Docket No. 8) to file a response to the defendants' Motion to Dismiss or in the Alternative Motion to Stay (Docket Nos. 4 and 7).

On December 3, 1998, the Clerk of the U.S. District Court for the Middle District of Florida received a copy of the Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss and/or Motion to Stay. (Docket No. 16).

The Plaintiff's Complaint alleges the following:

1. On or about April 30, 1997, Siekman was injured while working in the course and scope of his employment with Green Mark in Pasco County, Florida. (Docket No. 1, Paragraph 10).

2. In 1997, Siekman brought a civil action for damages for bodily injury against Nelson and Hamm alleging negligence in the Pasco County State Court. Kathy Siekman joined that action alleging a loss of consortium. (Docket No. 1, Paragraph 11).

3. At the time of the accident on April 30, 1997, Green Mark was acting as a sub-contractor for Nelson on a construction and renovation project known as "City of New Port Richey Downtown Sidewalk and Street Improvements—Phase III". (Docket No. 1, Paragraph 12).

4. Paragraph 36 of the sub-contract calls for Green Mark to provide workers' compensation insurance to its employees. Green Mark failed to provide workers' compensation insurance for Siekman. (Docket No. 1, Paragraph 13).

5. Pursuant to Section 440.10(1), Florida Statutes (1997), Nelson is the statutory employer of Siekman and is immune from any civil liability for the injuries alleged by Siekman except for the payment of workers' compensation benefits. (Docket No. 1, Paragraph 14).

6. Northern is the commercial general liability insurer for Nelson. Nelson and Hamm have called upon Northern to provide defense and indemnification for the injuries and damages alleged by Siekman. Northern has provided a defense to Nelson and Hamm pursuant to a reservation of rights. (Docket No. 1, Paragraph 15).

7. Northern issued a commercial general liability policy bearing policy number EPA25378317 with effective dates of May 1, 1996 through May 1, 1997 to Nelson. (Docket No. 1, Paragraph 16).

8. The policy specifically provides as follows:

SECTION 1—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

A. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

\* \* \* \* \* \*

2. Exclusions

This insurance policy does not apply to:

\* \* \* \* \* \*

E. Employer's Liability

"Bodily Injury" to:

(1) An "Employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of insured's business;

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. (Docket No. 1, Paragraph 17).

9. Section 440.10(1) Florida Statutes (1997) states that Siekman is a statutory employee of Nelson. (Docket No. 1, Paragraph 18).

10. Exclusion (e)(1) of the commercial general liability insurance policy issued to Nelson by Northern specifically excludes the injuries alleged by Siekman. (Docket No. 1, Paragraph 19).

11. Northern is in dispute with Nelson, Hamm, and Siekman over their respective rights. (Docket No. 1, Paragraph 20).

### DISCUSSION

■ Defendant's Memorandum in Support addresses three arguments as the grounds for dismissal. (Docket No. 16) The three arguments are applications of the "doctrine of abstentions" from the Supreme Court opinions in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). This Court has ruled on the subtle distinctions of federal court abstention and its discretion to consider declaratory judgments. *General Star v. Puckit, L.C.*, 818 F.Supp. 1526, 1529–1531 (M.D.Fla.1993). In General

Star, this Court found that doctrines such as Burford and Colorado River should be, "employed to decide issues concerning abstention of federal courts from exercising jurisdiction." Id. at 1530. On the other hand, Brillhart on its face should, "serve as a basis for determining whether the exercise of discretion under the Declaratory Judgment Act is appropriate." Id. at 1530. This distinction was not addressed in the defendants' Memorandum in Support (Docket No. 16) but is separated by the Court to determine their individual applicability to the issue at bar.

### A. Burford Abstention

■ Under the Burford doctrine, where adequate state court review is available, the federal court sitting in equity must abstain from interfering with the proceedings of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).[1]

Since 1989, the Burford decision has consistently remained true to its original standards and various interpretations and emphasis have been added. More profoundly, courts seem to favor a trend towards a more limited interpretation of the third circuit New Orleans Public Service, Inc. ("NOPSI") language.

The Supreme Court's ... decision in NOPSI indicates that the opinion in the Burford abstention requires more than a

---

1. As the defense cites, the Burford case itself involved a constitutional challenge to the Texas Railroad Commission's grant of a certain oil drilling permit, and would have involved the federal court in the review and interpretation of a highly complex regulatory scheme created by the state. Recognizing the "expe-

ditious and adequate" nature of state judicial review, as well as the delays and confusion that had resulted form past federal review, the Supreme Court concluded that federal court abstention was appropriate. *Burford v. Sun Oil Co.*, 319 U.S. at 327, 334, 63 S.Ct. 1098 (1943).

desire to avoid disrupting the state regulatory system; (a mere avoidance of disruption rationale) would justify abstention in any instance where a matter was within an administrative body's jurisdiction. Burford abstention requires, among other considerations, that the regulatory system have as a central purpose uniformity to achieve important local interests that would be frustrated by federal court review. *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 272 (3d Cir.1991).

In Peat Marwick Main, the court held that the standards of Burford did not apply to a claim brought by policyholders against the independent auditor of an insolvent insurer. *Peat Marwick Main* at 271. This was despite the existence of a comprehensive state framework governing insolvent insurance companies. Id. at 271. In so holding, the court characterized the connection between the claim and state regulatory apparatus as "simply too attenuated to justify renunciation of a federal court's obligation to exercise the jurisdiction granted to it by Congress." Id. at 271.

■ The Burford doctrine has been narrowed in other regards. For example, unclear state law issues should no longer be viewed as sufficient grounds for abstention absent some additional showing. "That a court must resolve unsettled issues of state law is now relevant to the Burford analysis only if it is likely to disrupt the state's regulatory scheme." *Lac D'Amiante du Quebec v. American Home Assurance Co.,* 864 F.2d 1033, 1044 (3d Cir.1988).

■ Analysis of the above cases, and cases which have cited and utilized the Burford doctrine, reveals three issues consistently relevant to the applicability of Burford: (1) the complexity and comprehensiveness of the state scheme, (2) the disruptive nature of federal review (and the concomitant state interest in uniformi-

ty and autonomy), and (3) the dominance of federal issues (or lack thereof). *Chiropractic Alliance of New Jersey v. Parisi,* 854 F.Supp. 299, 305 (D.N.J.1994).

■ Addressing the first issue, this Court finds that the state scheme is neither so complex nor comprehensive as to warrant Burford abstention. The plaintiff is seeking a declaratory judgment for an interpretation of a statutory employee as described according to the Florida Workers' Compensation Statutes 440.10(1). (Docket No. 1). The facts in this case are no where near the highly technical and far-reaching regulatory scheme present in Burford. The allegations that are addressed in the Plaintiff's Complaint (Docket No. 1) do not demand an in-depth review of the state workers' compensation scheme. In other words the bottom-line issue facing this Court is of the nature, jurisdiction, and quality that this Court has addressed in the past.[2] In fact, it is not uncommon for a federal court to decide workers' compensation issues. (Docket No. 16).

The second question—disruption of state interests—is not as clear-cut. As suggested, a plaintiff is asked to exhaust his administrative remedies before coming to court. As such this case sits while a state court case and administrative hearing lie in waiting. On the one hand, the issue central to the administrative hearing and a key for liability in the state and federal cases is the interpretation of the Florida Statutes 440.10(1) "statutory employee". The decision is certainly of direct consequence and the kind described as a valid state interest. In fact, the court in NOPSI observed that claims relating to a state agency's alleged misapplication or interpretation of lawful authority may invoke Burford. *New Orleans Public Service, Inc.,* 491 U.S. at 362, 109 S.Ct. 2506. However, "the McCarran–Ferguson Act 15

---

**2.** *General Star Indemnity Company v. Puckit, L.C.,* 818 F.Supp. 1526 (M.D.Fla.1993). In General, this Court determined that an insurer was not liable under policy to a recycling

company. The case warranted an exercise of abstention and ultimately dismissal in light of similar and additional issues being considered in a state court case.

U.S.C. § 1011, *et seq.*, specifically provides that it is in the public interest for the states to continue serving their traditional role as the preeminent regulators of insurance in the federal system and indicates the special status of ... its realm of state sovereignty." *Lac D'Amiante du Quebec,* 864 F.2d at 1045.

Yet, lacking in the Florida Statutes is any language that suggests an intention on the part of the state agency or legislation to deal with all aspects related to workers' compensation in the state in an exclusive manner, (more specifically to avoid any federal involvement). If the Court were to ultimately to decide on the prospective declaratory relief sought by the plaintiff, the result would effectively enforce the workers' compensation statutes as intended by the state legislature.

The third issue—predominance of federal issues—is a characteristic of the Burford abstention doctrine. The case before this Court arises under Rule 57, Federal Rules of Civil Procedure, and Title 28 U.S.C. § 2201. Written instruments, including ordinances and statutes, may be construed before or after breach upon the petition of a properly interested party. Rule 57, Federal Rules of Civil Procedure. In other respects the Uniform Declaratory Judgment Act affords a guide to the scope and function of the Federal Act. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

The three factors taken as a whole leave this Court to decide that the Burford abstention is not appropriate in this case. On a quick review the issues of this case concern state interests; however, the issues do not rise to such a level to warrant a deference of jurisdictional authority. This case lacks a comprehensive or complex state scheme, that there is little likelihood of any significant disruption of state enforcement mechanisms, and the totality of federal issues all dictate the pursuit of these issues before this Court.

**B. Colorado River Abstention**

Under Colorado River, a federal court has latitude to surrender its jurisdiction only if the "exceptional circumstances" test employed by the Court is met. *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[3] The emphasis is not to find some substantial reason for the exercise of the jurisdiction, but rather, " ... whether there is the clearest of justifications to surrender that jurisdiction." *Moses H. Cone Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As such, a high hurdle favoring the exercise of jurisdiction must be overcome when circumstances involving the Colorado River "abstention doctrine" are present. *General Star Indemnity Company v. Puckit, L.C.,* 818 F.Supp. 1526, 1529 (M.D.Fla. 1993).

The Fifth Circuit, our predecessor circuit, has found that the factors set forth in the Colorado River case are not applicable in determining whether to entertain a "declaratory judgment". *Rouffanche v. Kavanaugh,* 1993 WL 390143 (E.D.La. 1993). Rather utilizing opinions from that circuit has made it clear that other factors should be considered. *The Travelers Insurance Company v. Louisiana Farm Bureau Federation, Inc.,* 996 F.2d 774 (5th Cir.1993), *Granite State Insurance Company v. Tandy Corporation,* 986 F.2d 94 (5th Cir.1992), *Rowan Companies, Inc. v. Griffin,* 876 F.2d 26 (5th Cir.1989), *Angora Enterprises, Inc. v. Condominium Association Lakeside Village, Inc.,* 796 F.2d 384 (11th Cir.1986). Among the factors to be considered in determining whether to en-

---

**3.** The Supreme Court ruled the McCarran Amendment was not an issue of original jurisdiction for the district courts. As such, it has become the, "duty of District Court to adjudicate a controversy properly before it." *Colorado River* at 813, 96 S.Ct. 1236. It was determined that state courts may determine and reserve the right to exercise their jurisdiction over two Indian tribe's water rights, as long as those rights do not imperil the Government's special obligation to protect the Indians.

tertain a suit for declaratory judgment are the following:

(1) Whether there is another pending proceeding in which the matters in controversy between the parties may be fully litigated;

(2) Whether the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping;

(3) Whether there are possible inequities in permitting the declaratory plaintiff to gain precedence in time and forum;

(4) Whether the suit is inconvenient for the parties or witnesses; and

(5) Whether retaining the lawsuit in federal court would serve the purposes of judicial economy.

*Travelers Insurance Company v. Louisiana Farm Bureau Federation,* 996 F.2d 774, 777 (5th Cir.1993).

█ There is a pending state court proceeding in Pasco County and an administrative hearing already scheduled in Tallahassee, Florida. Although the Court recognizes that the state court obtained jurisdiction first, followed by the administrative hearing, the issues in the state and federal actions are not identical as required by the Colorado River abstention. If the state and federal court proceedings are not concurrent, then Colorado River abstention is unquestionably not appropriate. *Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 49 (2d Cir. 1994). Moreover the parties in both actions are not identical: it appears that Northern Insurance Company is not included in the state court action, but reserves the right of indemnifying policyholders, Nelson and Hamm. Finally, the fact that both actions arise out of similar circumstances is not sufficient justification for abstention where the claims are not concurrent. *Farkas v. D'Oca,* 857 F.Supp. 300, 303 (S.D.N.Y.1994).

Also, it appears this suit was not filed in anticipation of another suit; the defendants in the federal court proceeding are the parties involved in the state court action. The federal court plaintiff, Northern, is seeking the declaratory judgment. It would be reasonable to infer that the plaintiff in this proceeding is not forum shopping.

The third, fourth, and fifth factors are not addressed because of their lack of importance or inapplicability in the decision. The consideration of these elements is within the sound discretion of this Court. The Travelers Insurance factors are not a checklist but rather elements to weigh, on balance, and decide whether they collectively equal "exceptional circumstances" supporting abstention.

In sum, this Court finds that the considerations of exceptional circumstances, with the aid of other circuits declaratory judgment limitations, weigh in favor of not exercising abstention based on the Colorado River doctrine. Those factors most applicable balance in favor of this Court retaining jurisdiction.

## C. Brillhart Abstention

█ The defendants quickly addressed the advisability of this Court to dismiss based upon a third theory of abstention based on an opinion of the United States Supreme Court in Brillhart. *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Brillhart is used to avoid uneconomical as well as vexatious actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). (See Docket No. 4 p. 10).

Unfortunately, when the defendants asked this Court to consider the possibility for abstention under Brillhart, they failed to realize this court has adopted variant factors. General Star explained the distinctions between the Colorado River and Brillhart abstention doctrines. *General*

*Star Indemnity Company v. Puckit, L.C.,* 818 F.Supp. 1526, 1529–31 (M.D.Fla.1993).

 Due to the lack of legal precedent, this Court turned to cases outside of the Eleventh Circuit to determine the discretion provided by the Declaratory Judgment Act. See *General Star Indemnity Company v. Puckit, L.C.,* 818 F.Supp. 1526, 1531 (M.D.Fla.1993). The third circuit first elaborated on the factors of inquiry first stated in Brillhart. Those factors are:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of the obligation; and

(4) the availability and relative convenience of other remedies.

*United States v. Commonwealth of Pennsylvania, Dept. of Environmental Resources,* 923 F.2d 1071, 1075 (3rd Cir. 1991). This Court found that the four elements mentioned above, taken together with the general point addressed in Brillhart, "can all parties in interest be satisfactorily adjudicated in the state court proceeding", would be consistent with the outcomes and rulings in the Eleventh Circuit. *General Star* at 1031. *Angora Enterprises, Inc. v. Condominium Association of Lakeside Village, Inc.,* 796 F.2d 384 (11th Cir.1986), *Cincinnati Ins. Co. v. Holbrook,* 867 F.2d 1330 (11th Cir.1989). The application of these elements unveils that a dismissal based on an adopted Brillhart doctrine would be unwarranted. As mentioned, these are not the same parties as listed on the complaint of the state court proceeding. In fact, as the Plaintiff, Northern, mentions there is an additional issue to consider in federal court which is not addressed in the state court proceeding. (Docket No. 1) Northern Insurance Co. has asked this Court to resolve a cov-erage issue for the insured defendants. (Docket No. 1). As such, a review of the five factors allows this Court the discretion to abstain, but the facts at bar prevent it from exercising its option to abstain.

### *CONCLUSION*

In sum, the three doctrines of abstention suggested by the defense are inapplicable for the case at bar.

The better course of direction is to stay this action pending an exhaustion of an administrative remedy. The three available proceedings state, federal, and administrative remedies should not compete and run concurrently. In fact, the evaluation of remedies should be examined consecutively. As such it is the determination of this Court to postpone any federal proceeding pending a resolution from the administrative hearing. Accordingly, it is **ORDERED** that the defendant, Nelson's Motion to Dismiss Plaintiff's Complaint (Docket Nos. 4 and 7) be **DENIED;** the defendant's, Motion to Stay Pending Administrative Agency Determination (Docket Nos. 4 and 7) be **GRANTED;** and this cause be **ADMINISTRATIVELY CLOSED** pending resolution of the underlying action and all other motions are deferred at this time. The plaintiff **SHALL** notify the Court within five (5) days of administrative agency's decision and it's effect on the instant case.