UNITED STATES of America,
Appellant,

v.

COMMONWEALTH of PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL RESOURCES.

No. 90–5337.

United States Court of Appeals,
Third Circuit.

Argued Oct. 11, 1990.

Decided Jan. 22, 1991.

Rehearing and Rehearing In Banc
Denied March 22, 1991.

Richard B. Stewart, Asst. Atty. Gen., James J. West, U.S. Atty., Martin C. Carlson, Asst. U.S. Atty., Office of U.S. Atty., Harrisburg, Pa., Thomas R. Bartman, U.S. Dept. of Justice, Land & Natural Resources Div., and J. Carol Williams, and Nancy K. Stoner (argued), Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., for appellant.

Martin H. Sokolow, Jr. Chief, Cent. Region Litigation and David Wersan, Carl B. Schultz (argued), Asst. Counsel Commonwealth of Pennsylvania Department of Environmental Resources Office of Chief Counsel, Harrisburg, Pa., for appellee.

Before MANSMANN, COWEN and ALITO, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

The underlying issue in this case is whether the United States must comply with an administrative order issued by the Pennsylvania Department of Environmental Resources ("DER") to clean up a site located on the United States' property at the Navy Ships Parts Control Center ("Navy Control Center") in Mechanicsburg, Pennsylvania. By a lawsuit against the United States Department of the Navy, the Navy Control Center, and others, in the Commonwealth Court of Pennsylvania, the DER sought the United States' compliance with the Pennsylvania Clean Streams Law, 35 Pa.Cons.Stat.Ann. § 691.1, *et seq.* (Purdon's Supp.1990), and the Pennsylvania Solid Waste Management Act, 35 Pa.Cons.Stat.Ann. §§ 6018.101–.1003 (Purdon's Supp.1990). Although the United States raised a sovereign immunity defense, it took the affirmative step of filing a civil action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, in the United States District Court for the Middle District of Pennsylvania where the Navy Control Center is located. The district court declined to exercise discretion and dismissed the suit. Because we find that

the United States has a compelling interest in adjudicating its sovereign immunity under federal statutes in a federal forum, we will vacate the dismissal and remand the matter for further proceedings.

## I.

The Navy Ship Parts Control Center covers approximately 825 acres, and the site at issue consists of an approximately 12 mile long drainageway. Stormwater flows from the Navy Control Center into this drainageway; at a one-mile long stretch the drainageway resembles a "low-lying area of land" which adjoins public athletic fields where children play. At this point the drainageway is admittedly contaminated by polychlorinated biphenyls (PCBs).

The Pennsylvania DER issued an administrative order on August 24, 1988, directing the United States to remove and dispose of all contamination at the site.[1] On March 23, 1989, the DER filed a petition to enforce this order in the Commonwealth Court of Pennsylvania. The United States then attempted to remove the case to the United States District Court for the Middle District of Pennsylvania. Upon motion by the DER, the district court remanded the case to the Commonwealth Court, finding that removal to the federal court was unavailable because the United States' defenses did not arise under federal law for the purpose of 28 U.S.C. § 1331.

Shortly thereafter, the United States filed this lawsuit in the United States District Court for the Middle District of Pennsylvania, seeking relief under the Declaratory Judgment Act that the DER's "actions to enforce its administrative order are barred by sovereign immunity and CERCLA" and "that the [DER's] cleanup standard and remedial action ordered by the [DER] are arbitrary, capricious and unreasonable" and should therefore be set aside. The United States also sought injunctive relief to prevent further DER enforcement activity. Both parties agree that the af-

---

**1.** Although a copy of the administrative order is not included in the record, the parties agree that the order contained both investigative and remedial directives and set forth deadlines for compliance.

firmative claims raised in the federal lawsuit are identical to the defenses asserted in the state court action. The United States moved for summary judgment; the DER countered with a motion for partial summary judgment and a motion to dismiss under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

Granting the DER's motion, the district court dismissed the suit on February 22, 1990,[2] articulating its refusal to exercise discretion under the Declaratory Judgment Act for two reasons. First, the issues raised in the federal suit were identical to those raised in the pending state court action. Second, the district court was persuaded that the United States' suit for declaratory and injunctive relief in federal court constituted an inappropriate "procedural fencing" tactic and another attempt at "forum shopping", especially given its failed attempt at removal.[3] In the view of the district court:

> [w]here there is a pending action in a state court which can adequately adjudicate federal law defenses, and where that case is not otherwise removable to federal court, it would be inappropriate for this court to entertain a separate declaratory judgment action to rule on the validity of anticipated defenses based on federal laws.

In the parallel state court action, by order of the Commonwealth Court dated March 15, 1990, the United States was directed to comply with the DER's administrative order as specified in the enforcement order.[4]

■ Thirty-six days after the Commonwealth Court order, the United States filed this timely appeal from the district court's order dismissing its complaint. We review

a dismissal under the Declaratory Judgment Act for abuse of discretion. Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1224 (3d Cir.1989). This standard is applied with a caveat, however; because the Declaratory Judgment Act should "have a liberal interpretation," "the ambit of the district court's discretion is somewhat circumscribed and the range of our review is correspondingly enlarged" when the district court has denied declaratory relief. Exxon Corp. v. Federal Trade Commission, 588 F.2d 895, 900 (3d Cir. 1978).

## II.

Neither party disputes that the district court had original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1345 (district courts shall have original jurisdiction of all civil actions commenced by the United States). Rather, it is the discretion to exercise jurisdiction which is at issue, and specifically, whether the United States is entitled to a declaratory judgment in federal court, its forum of choice, even though identical issues have been raised in a parallel state court action.

In its order of dismissal, the district court clearly articulated that its dismissal was grounded on its discretion under the Declaratory Judgment Act, and it did not reach the question of abstention under the Colorado River doctrine. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This approach is appropriate because although Colorado River abstention and discretion under the Declaratory Judgment Act often appear confusingly similar,[5] they differ in scope.

---

**2.** The district court disposed of the outstanding motions by holding that they were "deemed moot and therefore denied."

**3.** The United States has argued that the Department also engaged in forum shopping by electing not to name the Secretary of the Navy as a defendant, thereby defeating federal jurisdiction under 28 U.S.C. § 1442(a)(1). United States Reply Brief at 14 n. 16. See Lovell Mfg., Division of Patterson–Erie Corp. v. Export–Import Bank of the United States, 843 F.2d 725, 733 (3d Cir. 1988) (stating that removal under 28 U.S.C. § 1442(a)(1) is available only to persons and not

agencies). At oral argument, counsel for the DER was unable to explain the DER's decision not to name the Secretary of the Navy.

**4.** While the record is not clear on the current status of the case pending before the Commonwealth Court, counsel for the DER did submit a copy of a Commonwealth Court enforcement order following oral argument on this appeal.

**5.** This confusion has generated several conceptual approaches, differing both inter- and intra-circuit. See, e.g., Terra Nova Ins. Co., Ltd. v. 900

The district court's discretion under the Declaratory Judgment Act is significantly greater than under *Colorado River*. While the factors to be evaluated are similar, the test for abstention under *Colorado River* requires exceptional circumstances. *Colorado River*, 424 U.S. at 818; 96 S.Ct. at 1246; *see New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 2512, 2513, 105 L.Ed.2d 298 (1989) (abstention discretion is a limited exception to the court's otherwise "virtually unflagging" obligation to exercise jurisdiction); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983) (referring to *Colorado River* exceptional-circumstances test). Moreover, although the Supreme Court in *Moses H. Cone* considered the exercise of federal jurisdiction in a diversity case where a related state action was pending and applied the extraordinary circumstances test, *Moses H. Cone* did not involve a claim for declaratory relief and therefore did not implicate the exercise of broader discretion under the Declaratory Judgment Act. *Moses H. Cone*, 460 U.S. at 4, 103 S.Ct. at 930 (case arises as petition to compel arbitration). *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir.1983) (distinguishing exceptional circumstances test reiterated in *Moses H. Cone* from declaratory judgment action; *see also United States Fidelity & Guaranty Co. v. Algernon–Blair, Inc.*, 705 F.Supp. 1507, 1521 (M.D.Ala.1988) (exceptional circumstances test does not apply to declaratory judgment actions).

■ We have previously made clear that a dismissal appropriate under the broader standard of the Declaratory Judgment Act should be effected without resort to the more limited doctrine of abstention. *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d at 1224 n. 12 (declining to "decide if *Colorado River* analysis is ever proper in the declaratory judgment context or if it is subsumed in the inquiry under the Act" but suggesting the exercise of discretion

*Bar, Inc.*, 887 F.2d 1213, 1222 n.11 (3d Cir.1989) (noting confusion in Fifth Circuit). For a clear discussion of several illustrative approaches, *see*

first under the Declaratory Judgment Act before reaching *Colorado River* abstention). Therefore, the traditional discretion of the federal courts to decide whether to hear declaratory judgment cases is not limited by *Colorado River* and *Moses H. Cone*, but will be subject to the "liberal interpretation" to be accorded the Declaratory Judgment Act. *Terra Nova*, 887 F.2d at 1223.

Given our correspondingly enlarged scope of review and the unique facts of this case, we hold that the district court's declination to exercise jurisdiction under the Declaratory Judgment Act is not consistent with a sound exercise of judicial discretion. We, therefore, need not address the issue of whether this case fits the exceptional circumstances test of *Colorado River*.

### III.

#### A.

The Declaratory Judgment Act permits the discretionary exercise of jurisdiction over suits otherwise falling under federal subject matter jurisdiction. In relevant part the Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

■ We have previously noted that the Declaratory Judgment Act "should have a liberal interpretation." *Exxon Corp. v. Federal Trade Commission*, 588 F.2d 895, 900 (3d Cir.1978). According to the Advisory Committee Note to Federal Rule of Civil Procedure 57 entitled Declara-

*United States Fidelity and Guaranty Co. v. Algernon–Blair, Inc.*, 705 F.Supp. 1507 (M.D.Ala. 1988).

tory Judgments, "the existence or non-existence of any right, duty, ... or immunity ... may be declared." As the district court correctly noted, Rule 57 does not preclude the exercise of jurisdiction where another adequate remedy exists. One commentator formulates the test for whether the district court should exercise federal jurisdiction when a parallel state court action exists as a determination of "which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." 10A Wright, Miller, Kane, Federal Practice and Procedure § 2758 (West 1983).

In *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court provided guidance for the exercise of this discretion.[6] There the district court had granted a motion to dismiss for the reason that a related case was currently pending in a state court without inquiry into the adequacy of the state forum to decide the respondent's claims. On review, the Supreme Court determined that an evaluation of the adequacy and reach of the state court proceeding was critical, suggesting "inquiry into the scope of the pending state court proceeding and the nature of defenses open there." *Id.* at 495, 62 S.Ct. at 1175. The central question is whether the controversy may "better be settled" in the state court and this may entail consideration of whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding. *Id.* As the Supreme Court makes clear in *Brillhart*, the mere existence of a related state court proceeding does not end the inquiry, rather the question of the adequacy of that state court proceeding remains.

In addition to *Brillhart*'s guidance, we have, through our opinions, enumerated several factors for consideration:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation; and

(4) the availability and relative convenience of other remedies. *Terra Nova*, 887 F.2d at 1224; *Bituminous Coal Operators' Assoc., Inc. v. International Union, United Mine Workers of America*, 585 F.2d 586 (3d Cir.1978).

In *Terra Nova*, our most recent discussion, an insurance company sought a declaratory judgment concerning its duty to defend and duty to indemnify its insured in a pending state tort action. *Terra Nova*, 887 F.2d at 1216. The district court stayed its determination of the declaratory judgment on both issues until after the conclusion of the state tort action. *Id.* We reversed the stay on the duty to defend, finding a clear duty to defend on the face of the complaint.

The stay of the duty to indemnify claim, however, was affirmed because of the pending state tort action. We found persuasive the district court's three factors impelling its exercise of discretion to stay the action pending resolution of the state tort action: 1) the general policy of restraint when the same issues are pending in a state court; 2) an "inherent conflict of interest" between an insurer's duty to defend in a state court and its attempt to characterize, in the federal suit, the state court suit as arising under a policy exclu-

---

6. In *Brillhart*, respondent Excess sought a declaration of its obligation under a reinsurance contract to a primary insurer, Central Insurance. In the underlying accident, the decedent was killed in a truck leased by Central's policyholder. Central refused to defend in the Missouri state court action brought by the decedent's petitioner Brillhart; subsequently both Central and its policyholder were liquidated and reorganized and Brillhart was awarded a default judgment. When no award was paid on the default judgment, Brillhart commenced garnishment proceedings in the state court against Central and its policyholder. Excess then brought this declaratory judgment action in federal court claiming that because no judgment had been paid, its contractual obligation to indemnify "sums paid" had not been triggered. Brillhart added Excess to the state garnishment action and moved for dismissal of the federal court action because of the existence of the state garnishment action. The district court granted the motion to dismiss and the court of appeals reversed.

sion; and 3) an avoidance of duplicative litigation.

We turn now to the application of these many factors to the facts before us.

### B.

#### 1. *Adequacy of the state court proceeding*

■ The first reason articulated by the district court for its dismissal was that the action pending in the Commonwealth Court of Pennsylvania concerned identical issues which could be adequately litigated in that forum. Rule 57 specifically states that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Thus, the mere existence of a pending suit in a state forum is not preclusive. Moreover, as *Brillhart* instructs, the adequacy of the pending state court action to remedy the dispute focuses the inquiry. In *Brillhart*, where the district court had made no findings concerning the ability of the state court to address some of the reinsurer's substantive claims, and where state law on the issues was unclear, the Court affirmed a stay of the federal suit until after the state garnishment proceeding had been concluded.

In this case, no such deference is required. Although the adequacy of the proceeding before the Commonwealth Court may have been in doubt at the time of the district court's February order of dismissal, the Commonwealth Court's March enforcement order clearly establishes the inadequacy of the state forum to adjudicate this dispute in a timely fashion. Indeed, the Environmental Hearing Board Act, 35 Pa. Stat.Ann. § 7514(d) (Purdon's Supp.1990), provides that the DER's administrative orders are enforceable even pending an appeal before the Pennsylvania Environmental Hearing Board and its determination on the merits. *See Commonwealth, Department of Environmental Resources v. Nor-*

*wesco Development Corp.*, 109 Pa.Cmwlth. 334, 531 A.2d 94, 96 (1987) (statutory predecessor to 35 Pa.S.A. § 7514 provided that appeal to the Board does not act as a supersedeas, and absent a grant of supersedeas, where a final adjudication of the DER's order is pending, it is enforceable). In this case, the Commonwealth Court has in fact entered an order that requires the United States to conduct investigative and remedial actions within specified time periods in order to comply with the DER's administrative order. Although the Environmental Hearing Board Act provides that the board may grant a supersedeas "for cause shown", it also provides that "[a] supersedeas shall not be issued in cases where pollution or injury to the public health, safety or welfare exists or is threatened during the period when the supersedeas would be in effect." 35 Pa.Stat.Ann. § 7514(d)(2).

The DER argues that the Commonwealth Court in fact reached the merits of the government's sovereign immunity defense and that this enforcement order includes an implicit rejection of this defense. We reject that proposition. The language [7] of the order merely references consideration of the evidentiary hearing and argument of counsel, and although the DER asserts that the hearing included argument concerning sovereign immunity, the language of the order is far too conclusory and general to have included an implicit rejection of such a substantive defense. Moreover, because this language was prefatory, it is reasonable to construe it only for its asserted proposition: that the order followed a full and fair evidentiary hearing and argument. Finally, because of the statutory scheme described above, the Commonwealth Court did not need to reach the issue of sovereign immunity to decide the petition before it.

Because the language of the order itself points to the conclusion that the Commonwealth Court was not considering the mer-

---

**7.** The Department relies upon the following prefatory language of the Order for its assertion of an implicit ruling on the merits of the sovereign immunity defense: "[U]pon consideration of a Petition for Enforcement of Administrative Or-

der filed by the [Department], and *pursuant to an evidentiary hearing and argument of counsel,* it is ORDERED that [the Department's order] shall be enforced in the following manner and to the following extent" (emphasis added).

its of the case, and in fact, that court was not required as a matter of law to consider the merits of any defenses, we do not interpret the order as implicitly rejecting a sovereign immunity defense. As the order also stated: "The purpose of this order is to effectuate productive activity and progress toward resolving the environmental problems relating to the Navy Ships Parts Control Center and its Cumberland County neighborhood, *pending review of DER's orders by the Environmental Hearing Board*" (emphasis added). Neither the language nor the apparent scope of the order suggests that the Commonwealth Court decided the issue of sovereign immunity, yet this enforcement order requires compliance with the DER's administrative order.

This "inquiry into the scope of the pending state proceeding and the nature of the defenses open there," required under a *Brillhart* analysis, yields the inescapable conclusion that although the scope of the pending state proceedings may eventually address the United States' defenses, the enforcement order does not timely address them.

Because the validity of the United States' sovereign immunity defense has not yet been addressed, the United States is in the untenable situation of being forced to comply without an adequate determination on the merits. This is important because if successful, the sovereign immunity defense would bar completely the administrative and enforcement orders. We need not address the more general substantive question of the Commonwealth Court's jurisdiction to rule on the sovereign immunity defense,[8] because clearly, under these state enforcement provisions, the United States has no adequate state court remedy. The United States persuasively argues that

"the entry of a judicial order against the United States requiring it to take certain actions causes injury to the United States by invading its sovereign prerogatives, by requiring it to expend resources on unwarranted litigation, and by requiring the Navy to take certain remedial actions which it views as inconsistent with state law and to which the United States has not consented."

Therefore, the state court remedy does not constitute an adequate or available remedy. Further, a declaration of the United States' sovereign immunity will resolve the uncertainty of the obligation. *Terra Nova,* 887 F.2d at 1224.[9]

### 2. Choice of Federal Forum

The district court rejected the United States' argument that it, as differentiated from a private litigant, had an enhanced justification for seeking relief in federal court. Apparently persuaded by the DER's suggestion that the United States was engaging in unjustifiable forum shopping, the district court relied on *United States v. California,* 529 F.Supp. 303 (E.D. Cal.1981). We do not find *United States v. California* either controlling or persuasive.

In that case the district court held that where the United States initially filed suit in a state court, it could not bring suit later in a federal court for a declaratory judgment concerning the same issues by arguing that the state court lacked power to grant the requested relief. Additionally, the suit concerned the division of water rights—a task the Supreme Court has noted that state courts particularly are capable of performing. *See Colorado River,* 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976). Here the DER, not the United States, chose the state court forum,

---

**8.** *See, Bennett v. White,* 865 F.2d 1395, 1406 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989) (state courts of *general* jurisdiction are under constitutional obligation to enforce federal causes of action). We assume without deciding that the Commonwealth Court of Pennsylvania is able to decide the sovereign immunity issue and question here only the timeliness of that review.

**9.** The other *Terra Nova* factors do not weigh heavily in this case. Neither party has raised inconvenience, nor is the public interest particularly implicated. As to *Terra Nova's* policy of avoiding a conflict of interest between a present duty to defend in a state court action and a concurrent attempt to obtain federal declaratory relief on the issue of a duty to indemnify, because this pertains specifically to the insurance context, it is not applicable here.

and a determination of federal sovereign immunity presents a very different substantive issue than the division of water rights.

The district court also relied on *Hanes Corp. v. Millard,* 531 F.2d 585 (D.C.Cir. 1976) (where a patent assignment contract between French and American citizens provided for international arbitration of disputes, American litigants could not reach to federal court for a declaratory judgment on the contract), in ruling to discourage forum shopping. In *Hanes,* the litigant sought declaratory relief from a federal court as a preemptive maneuver contrary to an agreed upon contractual provision for resolution of disputes. Unlike in *Hanes,* the United States does not seek to evade its contractually agreed upon remedy. Both *United States v. California* and *Hanes* are inapposite; the United States has neither changed its preferred forum midstream, nor sought a federal forum contrary to contractual arbitration terms.

Neither our research nor that of the parties here has disclosed a declaratory judgment case where the court held that the federal government is more justified in seeking a federal forum than a private litigant. In other contexts, however, several courts have so held. For example, in *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), the Supreme Court held that the policy of the Anti–Injunction Act to prevent state-federal conflict by preventing a party from obtaining an injunction in a federal court against a state court action was not compelling where the United States itself was a litigant seeking to prevent irreparable injury to the national interest. The frustration of superior federal interests which would ensue from an application of the Anti–Injunction Act would have been too great there to impute to the general language of the anti-injunction statute. *Id.* The Court recognized that a state-federal conflict had arisen from the commencement of the lawsuit; therefore a federal court's exercise of jurisdiction over an injunctive relief claim affecting the state court litigation would create no *additional* conflict. This situation is easily distinguishable from a private

litigant's attempt to forum shop to obtain injunctive relief in a federal court against a state court action.

The United States' compelling interest in a federal forum has also arisen in an abstention context. In *United States v. Composite State Board of Medical Examiners, et. al.,* 656 F.2d 131 (5th Cir.1981), the Court of Appeals for the Fifth Circuit ruled that abstention was inappropriate when the United States sought to litigate a federal interest in federal court against a State. There, the State had brought a disciplinary action against a doctor who served patients under the National Health Services Corporation Program. The State argued that the doctor had failed to comply with Georgia law; the United States replied that the doctor's participation in this federal program superseded the state law.

After the United States attempted unsuccessfully to intervene in the state court action, it sought an injunction in a federal court against the doctor's license suspension. The state board then moved to dismiss the federal action under both the Anti–Injunction Act and the abstention doctrine.

Citing *Leiter Minerals,* the district court denied the defendant's motion to dismiss on the Anti–Injunction Act grounds. *Composite,* 656 F.2d at 134. On appeal, with respect to abstention, the court of appeals noted the policy that unnecessary conflict between federal and state governments ought to be avoided. *Id.* at 136. The court concluded that that policy was not compelling where the United States was a litigant, noting a conflict from the inception of the lawsuit. *Id.* Moreover, for the United States, the federal court is its forum of choice. *See also NLRB v. Nash–Finch Co.,* 404 U.S. 138, 147, 92 S.Ct. 373, 379, 30 L.Ed.2d 328 (1971) ("[f]or the federal government and its agencies, the federal courts are the forum of choice."). *Accord United States v. City of Pittsburgh,* 589 F.Supp. 179 (W.D.Pa.1984), *rev'd on other grounds,* 757 F.2d 43 (3d Cir.1985). Therefore, the court in *Composite* held that abstention was inappropriate when the United States seeks in federal court to assert fed-

eral interests against a state. *Composite,* 656 F.2d at 135. Here the United States presents interests similar to those presented by the United States in *Composite.* The United States as a litigant seeks access to its forum of choice, the federal court, and seeks to assert federal interests against a state.

The parties agree that both suits present the same issues, but that factor does not defeat the federal issue of the United States' sovereign immunity. *See United States v. Pennsylvania Environmental Hearing Board,* 377 F.Supp. 545, 554 (M.D. Pa.1974) (the issue of sovereign immunity raised by the United States is one of a federal nature). While federal defenses to state law claims cannot create federal jurisdiction, *Public Service Comm'n of Utah v. Wycoff, Co., Inc.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952), affirmative questions of federal statutory interpretation do create federal interests sufficient for the exercise of jurisdiction. *United States v. Pennsylvania Environmental Hearing Board,* 377 F.Supp. at 545. We are cognizant that the Declaratory Judgment Act does not confer subject matter jurisdiction, *Colonial Penn Group, Inc. v. Colonial Deposit Co.,* 834 F.2d 229 (1st Cir.1987), but subject matter jurisdiction here is based on 28 U.S.C. § 1345 rather than federal question jurisdiction.

Finally, contrary to the district court's opinion, the fact that removal was inappropriate because the state court action involved no affirmative federal claims does not defeat the United States' federal lawsuit which does raise issues of federal statutory interpretation. This question of immunity is exactly the type of question anticipated by Rule 57 as appropriate for declaratory judgment.

### IV.

Because Pennsylvania law permits enforcement of the DER's administrative order pending a determination of the merits of the United States' sovereign immunity defense, the parallel pending state court action has not adequately resolved the dispute between the parties. Moreover, dupli-

cative litigation will not ensue; a federal court judgment will resolve uncertainty because a determination of the United States' sovereign immunity claim will be dispositive of the question whether under these facts the DER may issue an administrative order against the federal government under state law. The general policy of restraint, reflecting comity considerations, has less force in this case where the state and federal government agencies have brought suit against each other and federal-state conflict was manifest from the outset. The right of the United States to seek a declaration of its immunity under federal statutes in the federal forum of its choice should be granted no less weight than the state's right to seek enforcement of its order based on state law in a state court setting.

Here, where the United States is asserting a superior federal interest to which the state court has not given timely consideration, dismissal under the Declaratory Judgment Act is not consistent with a sound exercise of discretion. We will, therefore, vacate the order of dismissal and remand this matter to the district court for further proceedings.