SEATTLE AUDUBON SOCIETY; Washington Environmental Council; Washington Native Plants Society; Save the West; The Sierra Club, a non-profit corporation, Plaintiffs,

and

Native Forest Council, Plaintiff–Appellant,

v.

James R. MOSELEY, in his official capacity as Asst. Secretary of Agriculture; James Lyons, in his official capacity as Asst. Secretary of Agriculture for Natural Resources and Environment; United States Forest Service, an agency of the United States; Bureau of Land Management, an agency of the United States; Michael Espy, in his official capacity as Secretary of Agriculture; Bruce Babbitt, in his capacity as Secretary of the Interior, Defendants–Appellees,

and

Washington Contract Loggers Assoc.; Burgess Logging Co.; Lone Rock Timber Company, Inc.; Jackie Bryan Cox; Freres Lumber Company, Inc.; Norman V. Persons; A. Troy Reinhart; Gregory A. Miller; Northwest Forest Resource Council, Defendants–Intervenors.

SEATTLE AUDUBON SOCIETY; Washington Environmental Council; The Sierra Club, a non-profit corporation; Native Forest Council, Plaintiffs,

and

Save The West; Forest Conservation Council, Plaintiffs–Appellants,

v.

James R. MOSELEY, in his official capacity as Asst. Secretary of Agriculture; James Lyons, in his official capacity as Asst. Secretary of Agriculture for Natural Resources and Environment; United States Forest Service, an agency of the United States; Bureau Of Land Management, Medford District, an agency of the United States; Michael Espy, in his official capacity as Secretary of Agricul-

ture; Bruce Babbitt, in his capacity as Secretary of the Interior, Defendants–Appellees,

and

Washington Contract Loggers Assoc.; Burgess Logging Co.; Lone Rock Timber Company, Inc.; Jackie Bryan Cox; Freres Lumber Company, Inc.; Norman V. Persons; A. Troy Reinhart; Gregory A. Miller; Northwest Forest Resource Council, Defendants–Intervenors.

SEATTLE AUDUBON SOCIETY; Washington Environmental Council; Save The West; The Sierra Club, a non-profit corporation; Native Forest Council, Forest Conservation Council, Plaintiffs–Appellees,

v.

James R. MOSELEY, in his official capacity as Asst. Secretary of Agriculture; Bruce Babbitt, in his capacity as Secretary of the Interior; United States Forest Service, an agency of the United States; Bureau of Land Management, Medford District, an agency of the United States; Michael Espy, in his official capacity as Secretary of Agriculture, Defendants,

Washington Contract Loggers Assoc.; Burgess Logging Co.; Lone Rock Timber Company, Inc.; Jackie Bryan Cox; Freres Lumber Company, Inc.; Norman V. Persons; A. Troy Reinhart; Gregory A. Miller; Defendants–Intervenors,

and

James Lyons, in his official capacity as Asst. Secretary of Agriculture for Natural Resources and Environment, Defendant–Appellee,

Northwest Forest Resource Council, Defendant–Intervenor–Appellant.

Nos. 95–35052, 95–35214 and 95–35215.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1995.

Decided April 10, 1996.

Stephen M. Truitt, Washington, D.C., and John S. Karpinski, Vancouver, Washington, for plaintiff-appellant-cross-appellee Native Forest Council.

Peggy Hennessy, Reeves, Kahn & Eder, Portland, Oregon, for plaintiffs-appellants-cross-appellees Forest Conservation Council and Save the West.

Mark C. Rutzick, Mark C. Rutzick Law Firm, Portland, Oregon, for defendants-intervenors-appellants Northwest Forest Resource Council.

David C. Shilton, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendants-appellees.

Before: GOODWIN, SCHROEDER and PREGERSON, Circuit Judges.

## OPINION

PER CURIAM:

All three of these appeals arise from challenges to the April 13, 1994 decision by the Secretaries of Agriculture and Interior to approve a plan to manage federal land with spotted owl habitat in the Pacific Northwest.

### I.

In appeals nos. 95–35052 and 95–35214, Native Forest Council, Forest Conservation Council and Save the West ("the environmental plaintiffs") appeal the district court's grant of summary judgment upholding the United States Forest Service and Bureau of Land Management's ("the federal defendants") *Record of Decision for Amendments to Forest Service and Bureau of Land Management Planning Documents Within Range of the Northern Spotted Owl* ("ROD"), adopted April 13, 1994. The district court's opinion is published at *Seattle Audubon Society v. Lyons,* 871 F.Supp. 1291 (W.D.Wash. 1994) *("SAS").* We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the judgment of the district court.

The lengthy procedural history underlying these appeals is discussed at length in, *inter alia, Seattle Audubon Soc'y v. Evans,* 952 F.2d 297 (9th Cir.1991) and *Seattle Audubon Soc'y v. Espy,* 998 F.2d 699 (9th Cir.1993). District Judge Dwyer discusses fully the history and procedure underlying the appeals at issue here in his opinions. We need not repeat them in detail here, but will summarize briefly.

After our earlier opinions in cases in which environmental groups had sought to preserve

the habitat of the northern spotted owl, President Clinton in April 1993 established the Forest Ecosystem Management Assessment Team ("FEMAT") to examine options and make recommendations to the Secretaries of Agriculture and Interior in aid of their joint development of a forest management plan to cover federal lands in the Pacific Northwest. After reviewing 48 possible strategies, FEMAT narrowed the field to ten alternatives and assessed each in a single environmental impact statement ("EIS") prepared jointly by the Forest Service and the Bureau of Land Management ("BLM"). The Secretaries of Agriculture and Interior adopted Alternative 9 on April 13, 1994. These challenges to the legality of that decision followed.

The environmental plaintiffs contend that the district court erred in concluding that the federal defendants considered a reasonable range of alternatives for managing old growth owl habitat. They further contend that the federal defendants failed to comply with the viability regulation of the National Forest Management Act because the selected alternative provides for only an 80% likelihood that listed species will continue to be viable after implementation of the selected alternative, and the resulting 20% likelihood of extinction is impermissible under the regulation. 16 U.S.C. § 1604(g)(3)(B); 36 C.F.R. § 219.19. The environmental plaintiffs further contend that the district court erred in holding that the federal defendants considered adequately the cumulative environmental impacts associated with their preparation of the Environmental Impact Statement and selection of Alternative 9. *See* National Forest Management Act ("NFMA"), 16 U.S.C. § 1604(f)(5); National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* These contentions fail for the reasons set forth below.

■ We first deal with the environmental plaintiffs' contention that the federal defendants failed to consider adequately a "no action" alternative, thereby failing to consider a reasonable range of alternatives in violation of NEPA. *See* 40 C.F.R. § 1502.14(d). Our review of the record leads us to conclude that the federal defendants fully evaluated a reasonable range of alternatives before making their final decision. An agency is under no obligation to consider every possible alternative to a proposed action, nor must it consider alternatives that are unlikely to be implemented or those inconsistent with its basic policy objectives. *See Resources Limited, Inc. v. Robertson,* 8 F.3d 1394, 1401–02 (9th Cir.1993); *Headwaters v. Bureau of Land Management,* 914 F.2d 1174, 1180–81 (9th Cir.1990). Here, the federal defendants did consider a no harvest alternative as part of their preliminary discussion, but abandoned this alternative as inconsistent with their need to find a balance between competing uses. Moreover, the federal defendants' consideration of Alternative 1, which would have protected all old growth timber (less some salvage operations) provided a reasonable point of comparison for the other nine alternatives. Accordingly, the analysis performed by the federal defendants was adequate.

■ There is similarly little or no support for the environmental plaintiffs' contention that the selected alternative violates the applicable viability standards. The district court correctly explained that the selection of an alternative with a higher likelihood of viability would preclude any multiple use compromises contrary to the overall mandate of the NFMA. *See SAS,* 871 F.Supp. at 1315–16; *see also* 16 U.S.C. § 1604(g)(3)(B) (diversity is to be addressed in light of "overall multiple-use objectives"); 36 C.F.R. §§ 219.27(a)(6) (habitat maintained and improved "to the degree consistent with multiple-use objectives"); 219.26 (provide for diversity consistent with multiple-use objectives); 219.27(a)(5) (forest plans should "maintain diversity of plant and animal communities to meet overall multiple-use objectives"). Here, the record demonstrates that the federal defendants considered the viability of plant and animal populations based on the current state of scientific knowledge. Because of the inherent flexibility of the NFMA, and because there is no showing that the federal defendants overlooked any relevant factors or made any clear errors of judgment, we conclude that their interpretation and application of the NFMA's viability regulations was reasonable. *See Batterton v. Francis,* 432 U.S. 416, 425–26, 97 S.Ct.

2399, 2405–06, .53 L.Ed.2d 448 (1977) (the Secretary's interpretation of a statutory term is entitled to substantial deference).

■ Finally, the arguments advanced by the environmental plaintiffs concerning alleged deficiencies in the cumulative impact analysis fail because the United States Supreme Court has reaffirmed our court's long held position that the Endangered Species Act protects listed species from harm caused by habitat modification or destruction. *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* — U.S. —, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995); *Palila v. Hawaii Dept. of Land and Natural Resources,* 852 F.2d 1106, 1108 (9th Cir.1988). The environmental plaintiffs insist on reading Justice O'Connor's concurring opinion in *Sweet Home* as an invitation to private landowners to manage their land without regard to any obligation to avoid modifications which would harm listed species. Such a reading, however, ignores the fact that five Justices affirmed *Palila* in all respects. Therefore, contrary to plaintiffs' assertions, the cumulative impact analysis reasonably assumes that non-federal land will be managed to avoid harm to threatened species. We affirm the judgment of the district court in appeals nos. 95–35052 and 95–35214.

## II.

In appeal nos. 95–35215, the Northwest Forest Resource Council ("the Council") appeals the district court's grant of summary judgment in favor of the federal defendants on their cross-claims for declaratory relief. The district court's order granting leave to the federal defendants to amend their answer to assert cross-claims against the Council is published at *Seattle Audubon Soc'y v. Lyons,* 871 F.Supp. 1286 (W.D.Wash. 1994); the district court's opinion granting summary judgment is published at *Seattle Audubon Soc'y v. Lyons,* 871 F.Supp. 1291 (W.D.Wash.1994). We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

The Council wishes to litigate its challenges to the plan in the District of Columbia. The Council characterizes this case as one where the district court has conspired with the United States to manipulate the Declaratory Judgment Act ("The Act") and federal jurisdiction principles to thwart this wish by creating a novel right of review in the Western District of Washington. The Council contends that the district court lacked jurisdiction to consider the cross-claims or, if it did have jurisdiction, abused its discretion by exercising it. These contentions are untenable.

■ A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases "brought by any interested party" involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so. *See* 28 U.S.C. § 2201; *10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d,* § 2751, p. 569 (*"Wright & Miller"*). While the Council correctly points out that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts, where jurisdiction exists, the Act is intended to allow earlier access to federal courts in order to spare potential defendants from the threat of impending litigation. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Wright, Miller* & Kane, at pp. 569–570. The Act is also intended to help potential defendants avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligation of the litigants. *Id.* at pp. 570–71.

■ Declaratory judgment actions are justiciable if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *National Basketball Ass'n v. SDC Basketball Club,* 815 F.2d 562, 565 (9th Cir. 1987) (citations omitted). The cases cited by the Council are inapposite. For example, this is not a situation where a non-aggrieved government official is seeking first-time review in the Court of Appeals of a Benefits Review Board's decision regarding a third party's entitlement to statutory benefits, as was the case in *Dir. Office of Workers' Compensation Programs, DOL v. Newport News Shipbuilding and Dry Dock Co.,* — U.S. —, — – —, 115 S.Ct. 1278, 1283–85, 131 L.Ed.2d 160 (1995). Instead, this situation is more akin to that presented in *United*

*States v. Com. of Pa. Dept. of Envir. Resources,* 923 F.2d 1071, 1074–75 (3rd Cir. 1991). There, the State of Pennsylvania was proceeding in state court against the United States Navy seeking compliance with state environmental laws. The Navy raised sovereign immunity as a defense in the state action and simultaneously filed a declaratory judgment action in the district court. The issue on appeal was not whether the district court had jurisdiction over the Navy's action, but whether it abused its discretion by declining to exercise it. The Third Circuit held that the district court should have exercised jurisdiction under the Declaratory Judgment Act to resolve the dispute. *Id.* at 1079. Here too, in the context of an ongoing lawsuit and in the face of duplicative legal challenges brought in a different forum, the United States simply cross-claimed within the ongoing proceeding for a judgment affirming the defenses it would otherwise be forced to offer for a second time in the duplicative action.

Nothing in the Act bars a federal agency from seeking declaratory relief. Instead, the question is whether the district court would have had jurisdiction to hear a coercive action brought by the declaratory judgment defendant. *NBA,* 815 F.2d at 566. The answer here is obviously yes. The Council has been a long time intervenor in the underlying action, vigorous in its opposition to the successive forest management plans. Although never dismissed from the action underlying these appeals, the Council nevertheless filed additional actions in the District of Columbia challenging the 1994 forest management plan. Thus, not only could the Council have filed a coercive action in the district court against the Secretaries of Agriculture and Interior, it actually did.

Here, the district court was presented with a substantial controversy arising under federal law between parties with adverse interests surrounding a plan designed to bring some much needed coherence to the management of federal forests in the Pacific Northwest. This controversy presented concrete legal questions in the context of the federal defendants' real and reasonable apprehension that unless the Council's claims were litigated within a single proceeding, they faced the likelihood of confusion caused by differing judgments or, at least, the uncertainty and expense associated with proceeding later in another forum. In fact, both Judge Dwyer in the Western District of Washington and Judge Jackson in the District of Columbia specifically noted that the actions proceeding in both forums were substantially similar, and although unable to transfer venue in the cases arising from the Oregon dispute, Judge Jackson stayed proceedings in his court to "prevent a duplicative waste of judicial resources and prevent the award of potentially inconsistent relief by separate courts." *SAS,* 871 F.Supp. at 1288; *Northwest Forest Resource Council v. Thomas,* CV–94–1032 (TPJ) (D.C.C. June 30, 1994) (order transferring action to W.D. Wash.); *Northwest Forest Resource Council v. Dombeck,* CV–94–1031 (TPJ) (D.C.C. June 30, 1994) (order staying proceedings).

Because the resolution of the Council's claims against the federal defendants in a single action was both possible and desirable, the district court did not abuse its discretion by exercising jurisdiction to grant relief. We therefore affirm the judgment of the district court in the Council's appeal no. 95–35215.

**AFFIRMED.**