STATE AUTO INSURANCE
COMPANIES,

v.

Eric SUMMY;  Jeffrey Enck, trading as
E & J Rentals;  Bryant Dixon, a minor
by and through his parent and natural
guardian, Shawna Dixon;  Shawna
Dixon, Eric Summy;  Jeffrey Enck,
trading as E & J Rentals, Appellants.

No. 00–1116.

United States Court of Appeals,
Third Circuit.

Argued: Oct. 6, 2000.

Filed: Dec. 1, 2000.

As Amended Jan. 30, 2001.

John R. Trotman, Jr., (Argued), Peter Russell Kohn, Monheit, Monheit, Silverman & Fodera, P.C., Philadelphia, PA, Attorneys for Appellants.

Jonathan C. Deisher, (Argued) Post & Schell, P.C., Allentown, PA, Attorneys for Appellee.

Laura A. Foggan, Daniel E. Troy, Erin N. McGonagle, Wiley, Rein & Fielding, Washington, DC, Attorneys for Amicus Curiae Insurance Environmental Litigation Association.

Before BARRY, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Despite the pendency of a case in state court on the same issues, the District Court granted a declaratory judgment in favor of an insurance carrier on a coverage case based solely on state law. We conclude that in the circumstances, the District Court should have declined to exercise jurisdiction. Accordingly, we will vacate the judgment and direct that the complaint be dismissed.

Underlying this controversy is a suit for damages brought on behalf of Bryant Dixon, a child who allegedly was poisoned by lead paint in his home, a structure owned and leased by E & J Rentals. Dixon's complaint against E & J was filed in the Court of Common Pleas of Lancaster

County, Pennsylvania on March 12, 1999. After receiving notice of the impending suit, E & J notified State Auto Insurance Co., its liability carrier, of the claim. State Auto advised E & J that the policy's pollution exclusion applied to preclude coverage and, consequently, E & J would have no insurance protection against the Dixon claim.

On March 23, 1999, E & J's attorney sent a letter to State Auto, disagreeing with its denial of coverage and advising that he intended to ask for a declaratory judgment in state court to resolve the matter. State Auto responded by filing the present declaratory judgment action in the District Court for the Eastern District of Pennsylvania on April 7, 1999.

On June 11, 1999, E & J moved to dismiss or stay the federal action, arguing that the court should, in its discretion, decline to exercise jurisdiction over the matter. Three days later, E & J filed its own suit for declaratory judgment in state court. State Auto moved to dismiss the state suit; both parties filed motions for summary judgment in the two courts. After briefing that vigorously contested jurisdiction, the District Court denied E & J's motion to dismiss or stay on August 25, 1999 without stating its reasons for doing so.

On January 28, 2000, the District Court granted State Auto's motion for summary judgment.[1] E & J has appealed, challenging the decision of the District Court to adjudicate the declaratory judgment. E & J also argues the merits of the coverage issue.

Generally speaking, insurance companies include pollution exclusions in their liability policies to shield themselves from claims for injuries caused by exposure to harmful substances, irritants, contaminants, or chemicals as defined more precisely in the policies. The interpretation of these clauses, particularly in lead poi-

soning cases similar to Dixon's, has resulted in extensive litigation in state and federal courts throughout the country. No consensus on the interpretation and scope of the exclusionary clauses has emerged among courts nationally, nor in Pennsylvania, whose law applies here.

At the time the District Court denied E & J's motion to dismiss, only two Pennsylvania trial courts had ruled on this issue. *See Fayette County Hous. Auth. v. Housing & Redev. Ins. Exch.*, No. 2440—1997, 1999 WL 1457481 (Apr. 7, 1999); *Lititz Mut. Ins. Co. v. Steely*, No. 1044–1997, slip op. (C.P. Lancaster (Pa.) Apr. 17, 1998). Both courts held that pollution exclusion clauses similar to the one at issue here were ambiguous, and therefore the insurers were required to defend and indemnify the insured property owners.

In the interim between the District Court's denial of E & J's motion to dismiss and the grant of summary judgment for State Auto, the Pennsylvania Superior Court, in a 2–1 decision, reversed the order of the Court of Common Pleas of Lancaster County, and ruled in favor of the insurer. *Lititz Mut. Ins. Co. v. Steely*, 746 A.2d 607 (Pa.Super.1999). The policyholders in *Lititz* have since petitioned the state supreme court for allocatur.

The other Common Pleas case, *Fayette County Housing Authority*, also came before the Superior Court. Rather than following *Lititz*, the Superior Court *sua sponte* ordered rehearing *en banc* of the decision from the Court of Common Pleas of Fayette County. *Fayette County Hous. Auth. v. Housing & Redev. Ins. Exch.*, No. 693–WDA–99, Order (Pa.Super.Ct. March 9, 2000). The case was argued in September 2000.

United States District Courts within this circuit also have examined the pollution

---

**1.** On February 10, 2000, based on *res judicata*, the state trial court denied E & J's motion

for summary judgment in its declaratory judgment action.

exclusion's application to lead poisoning cases, with varying results.[2]

## I.

■ The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, provides a remedy that may be used by the federal courts in appropriate circumstances. This statute provides that a court *"may* declare the rights ... of any interested party," 28 U.S.C. § 2201(a) (emphasis added), and contemplates that district courts will exercise discretion in determining whether to entertain such actions.

The unique characteristics of the Act were first made clear by the Supreme Court in *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), a case involving a dispute between insurance carriers. The Court emphasized that the jurisdiction conferred by the Act was discretionary, and district courts were under no compulsion to exercise it. *Id.* at 494, 62 S.Ct. 1173.

> "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."

*Id.* at 495, 62 S.Ct. 1173.

After articulating the rationale, the Court listed specific factors for district judges to consider in deciding whether to hear declaratory judgment actions. A critical question, according to the Court, was "whether the questions in controversy between the parties to the federal suit, and which [were] not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* Naturally, this requires some inquiry into the scope of the state court proceeding, the nature of defenses available there, and whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding. *Id.*; *see also* Edwin Borchard, *Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments,* 26 Minn. L. Rev. 677 (1942) (observing that district courts are not obliged to exercise jurisdiction in declaratory judgment actions and concluding that refusal to exercise jurisdiction is proper where issues before state and federal courts are substantially the same and entertaining action would only duplicate judicial effort).

The discretionary nature of the declaratory judgment remedy became somewhat clouded after *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). There, the Court proclaimed that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress. *Id.* at 817, 96 S.Ct. 1236.

Although *Colorado River* was an abstention case involving federal claims, some courts applied its restrictive teachings to limit or abolish the discretion to deny declaratory judgments. *See, e.g., Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213, 1221 (3d Cir.1989) (listing cases in which *Colorado River* test was applied in declaratory judgment context). Notably, in *Terra Nova,* this Court disagreed with that approach. *Id.* at 1222. After exploring the ramifications of *Colorado River* and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460

**2.** The following cases held that pollution exclusions applied to preclude coverage: *St. Leger v. American Fire and Cas. Co.,* 870 F.Supp. 641 (E.D.Pa.1994), *aff'd. w/o opinion,* 61 F.3d 896 (3d Cir.1995); *Kaytes v. Scottsdale Ins. Co.,* No. 97–3225, 1997 WL 763022 (E.D.Pa. Dec.9, 1997); *Kaytes v. Imperial Cas. & Indem. Co.,* No. 93–1573, 1994 WL 780901 (E.D.Pa. Jan. 7, 1994). *Contra Nationwide Mut. Ins. v. Fair,* No. 96–1975 (W.D.Pa. Oct. 3, 1997) (holding that pollution exclusion was ambiguous and that insurer was obligated to defend and indemnify insured.).

U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that a district court may not grant a stay pending arbitration absent exceptional circumstances), we concluded that neither case diminished the jurisdictional discretion contained in the Declaratory Judgment Act, and that *Brillhart* retained its vitality. *Terra Nova*, 887 F.2d at 1223.

Because of lingering confusion among the courts over whether *Colorado River* eroded *Brillhart*, the Supreme Court revisited the issue in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 279, 281, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Reviewing the declaratory judgment remedy at some length, the Court reaffirmed *Brillhart's* standard of broad discretion and rejected *Colorado River's* restrictive "exceptional circumstances" test as inappropriate for the Declaratory Judgment Act. *Id.* at 286, 115 S.Ct. 2137. As *Wilton* phrased it, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288, 115 S.Ct. 2137. The statute "confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287, 115 S.Ct. 2137.

*Wilton's* emphasis upon "practicality" and "wise judicial administration" echoes *Brillhart's* specific admonition: "It is not our function to find our way through a maze of local statutes and decisions on so technical and specialized a subject [matter].... For one thing, it is too easy to lose our way." *Brillhart*, 316 U.S. at 497, 62 S.Ct. 1173. The Court concluded that district court decisions should be reviewed under an abuse of discretion standard in actions for "declaratory relief where paral-

lel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in the state court." *Wilton*, 515 U.S. at 290, 115 S.Ct. 2137.[3]

Two years after *Terra Nova*, in *United States v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 923 F.2d 1071, 1075 (3d Cir.1991), we applied a limiting factor from *Brillhart* to draw a distinction between declaratory judgment actions that district courts should entertain, and those in which jurisdiction ought to be declined. We concluded that the District Court did not have open-ended discretion to decline jurisdiction over a declaratory judgment action when the issues included federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding. *Id.* at 1076–79. That case was quite different from *Brillhart*, where the declaratory judgment action was restricted to issues of state law.

For cases like *Brillhart*, where district courts must decide whether to hear declaratory judgment actions involving insurance coverage issues, we have suggested relevant considerations:

1. A general policy of restraint when the same issues are pending in a state court;

2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;

3. Avoidance of duplicative litigation.

*Department of Environmental Resources*, 923 F.2d at 1075–76 (discussing *Terra Nova*).[4]

---

**3.** We have applied *Wilton's* standard of discretion to interpleader actions as well. *See NYLife Distributors, Inc. v. Adherence Group, Inc.*, 72 F.3d 371 (3d Cir.1995).

**4.** In *Kiewit Eastern Co., Inc. v. L & R Construc. Co., Inc.*, 44 F.3d 1194, 1198 n. 3 (3d Cir.1995) the Court noted the discretionary

factor in declaratory judgment actions, but proceeded on the merits because none of the parties contested that issue. Similarly in *Nationwide Mutual Fire Insurance Co. v. Pipher*, 140 F.3d 222 (3d Cir.1998) and *Nationwide Mutual Insurance Co. v. Buffetta*, 230 F.3d 634 (3d Cir.2000), apparently the parties neither cited *Wilton* nor contested jurisdiction.

These precedents counsel hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled. See *Mitcheson v. Harris*, 955 F.2d 235, 240 (4th Cir.1992) (noting that where there seemed to be equally relevant statements by the state courts on either side of the issue, it would be prudent to leave the question to be decided in the state proceeding).[5] A federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation. See *id.* at 239 (noting that "the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof."). Moreover, district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it. This is especially important in insurance coverage cases, although we do not mean to confine its relevance to that category.

In diversity matters, the federal courts are often called upon to apply state law without the guidance of state appellate rulings. To aid in the correct disposition of such cases, some courts have adopted the practice of certifying questions of law to the state's highest court. This practice has been encouraged and utilized by the United States Supreme Court. This Court has also used this procedure and found it to be a great benefit. We recognize the necessity of restraint, however, so that we do not overburden the already crowded dockets of the state appellate courts with too many certifications.

■ "[I]n declaratory judgment actions Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law." *Mitcheson*, 955 F.2d at 238. Consequently, it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law, questions which might otherwise be candidates for certification to the state's highest court. Such matters should proceed in normal fashion through the state court system. See *id.* at 240 (4th Cir.1992) ("The [state] interests assume greater saliency where, as here, the issues of state law are close."); *see also Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 225 n. 7 (3d Cir.1999). In short, where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions.

## II.

■ Clearly, the case at hand falls outside the area outlined by *Brillhart* and *Wilton* as appropriate for the District Court to exercise its jurisdiction. At the time the court denied E & J's motion to dismiss, Dixon's personal injury suit and E & J's petition for declaratory judgment were both pending in state court before the same judge, who was presumably already familiar with the insurance policy and with the scientific evidence available on lead paint poisoning. Judicial efficiency was not promoted when the District Court also considered this evidence, as it inevitably had to when deciding the federal declaratory judgment action.[6] If the District Court had not interfered, the state court would have been able to develop a coordi-

---

5. In *Nationwide Mutual Fire Insurance Co. v. Cassel*, 881 F.Supp. 133, 136 (M.D.Pa.1994), the court declined to exercise jurisdiction where the claim presented "a novel, and hence, unsettled issue of state law which the state courts should address."

6. In *McDowell Oil Service, Inc. v. Interstate Fire and Casualty Co.*, 817 F.Supp. 538, 546 (M.D.Pa.1993), a district judge noted that it would be inefficient for a federal court to decide a declaratory judgment action that would turn on the assessment of scientific data when the state court judge in the underlying tort action was already familiar with this data.

nated schedule of briefing and discovery that would have promoted the efficient resolution of both the declaratory judgment action and the underlying tort action, thereby conserving judicial resources as well as those of the parties.

Not only were there strong factors militating against the exercise of jurisdiction over this declaratory judgment action, but no federal interests were promoted by deciding this case in the District Court. Not a single federal question was presented to the District Court by State Auto. As noted earlier, two trial court decisions, but no appellate cases, were in existence in the state system, a forum that was fully able and prepared to resolve this purely state law issue. Entertainment of a federal declaratory judgment suit in these circumstances fits *Brillhart's* description of a "vexatious" and "gratuitous interference" with state court litigation.

It is irrelevant that the state declaratory judgment petition was filed after its counterpart in the District Court. Moreover, E & J's vigorous objection to the District Court's assumption of jurisdiction should have weighed in favor of refusing to entertain the action. Even in the absence of such a challenge, however, the circumstances presented here would readily have supported a decision to decline jurisdiction *sua sponte*.

In order to maintain the proper relationship between federal and state courts, it is important that district courts "step back" and allow the state courts the opportunity to resolve unsettled state law matters. As *Wilton* reminded us, the Declaratory Judgment Act confers a discretion on the courts rather than an absolute right on litigants. *Wilton,* 515 U.S. at 287, 115 S.Ct. 2137. It follows that the state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum. When the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts. Unusual

circumstances may occasionally justify such action, but declaratory judgments in such cases should be rare.

We appreciate the efforts of the able and conscientious district judge in this case to expedite the disposition of litigation assigned to him, but as we have mentioned, other overriding considerations come into play. Decisions in declaratory judgment actions must yield to "considerations of practicality and wise judicial administration." *Wilton,* 515 U.S. at 288, 115 S.Ct. 2137. The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum.

Whether declaratory relief should be granted "will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287, 115 S.Ct. 2137. We conclude that the assumption of jurisdiction under the Declaratory Judgment Act in this case was not consistent with a sound exercise of discretion.

Accordingly, we will vacate the judgment of the District Court and remand with directions to dismiss the complaint.